**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEORGE PITSILIDES,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-01736** |
| **v.** | : | **(JUDGE MANNION)** |
| **WILLIAM P. BARR,** **Attorney General of the** **United States; and** | : : | |
| **THOMAS E. BRANDON,** **Acting Director, Bureau of** **Alcohol, Tobacco, Firearms, and** **Explosives,** | : : : | |
| **CHRISTOPHER A. WRAY,** **Director of the Federal Bureau of** **Investigation,** | : | |
| **UNITED STATES OF AMERICA,** | : : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the court is plaintiff George Pitsilides's ("Pitsilides") motion for

summary judgment. (Doc. 25). Also before the court is defendants William

P. Barr (Attorney General of the United States), Thomas E. Brandon (Acting

Director, Bureau of Alcohol, Tobacco, Firearms and Explosives), Christopher

Wray (Director of the Federal Bureau of Investigation), and the United States

of America's (collectively, the "Government") motion for summary judgment (Doc. 22). For the reasons that follow, the court will grant the Government's and deny Pitsilides's motion for summary judgment.

## I.   **Background**

In 1998, Pitsilides pleaded *nolo contendere*[1] in the Court of Common Pleas of Schuylkill County to one count of Criminal Conspiracy to Pool Selling and Bookmaking under 18 Pa.C.S. §903 and 18 Pa.C.S. §5514-1, and two counts of Pool Selling and Bookmaking under 18 Pa.C.S. §5514-3. (Doc. 24 at ¶6). These offenses are each graded as a misdemeanor of the first degree under Pennsylvania law and punishable by a maximum sentence of five years' imprisonment under 18 Pa.C.S. §§106(b)(6) and 1104(1). *Id*. at ¶9. He was thereafter sentenced to two years of unsupervised probation and ordered to pay fines in the amounts of $30,000 ($10,000 per count), $21,483 in costs to the Office of the Attorney General for a Grand Jury Investigation, and $448,500 in restitution stemming from the amount involved in his gambling activities. *Id*. at ¶¶10-12.

---

[1] The court observes that "a plea of *nolo contendere* has the same legal consequences as a plea of guilty and results in a conviction." *U.S. v. Adedoyin*, 369 F.3d 337 (3d Cir. 2004) (*citing Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000); *Myers v. Sec'y of Human Serv.*, 893 F.2d 840, 844 (6th Cir. 1990); *U.S. v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981).

Since 1998, Pitsilides has also pleaded guilty to two misdemeanor counts of owning a place where illegal gambling was occurring, pursuant to Va. Code §18.2-328. Beyond this, the record does not indicate he has a further criminal history.

On its face, 18 U.S.C. §922(g)(1) prohibits Pitsilides from owning a firearm due to his Pennsylvania convictions.[2] In a complaint filed in this court on October 4, 2019, Pitsilides seeks this court's declaratory judgment that §922(g)(1) as applied to him violates the Second Amendment. (Doc. 1 at 9-11). Pitsilides and the Government have each submitted motions for summary judgment, along with responses and replies to the respective motions. (Docs. 22,25, 30-32, 35-37). As the parties' cross-motions for summary judgment have been fully briefed, they are ripe for discussion.

## II.   **Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

---

[2] Pitsilides's complaint avers that his convictions do not prohibit him from possessing firearms under Virginia law. (Doc. 1 at ¶20). The Government does not contest this point.

Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a summary judgment motion, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting Matsushita*

- 4 -

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Courts may resolve cross-motions for summary judgment concurrently. *See Holloway v. Sessions*, 349 F.Supp.3d 451, 455 (Sept. 28, 2019) (*citing Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008)). When doing so, the court must view the evidence in the light most favorable to the non-moving party with respect to each motion. *Id.*; Fed. R. Civ. P. 56.

## III.   **Discussion**

Pitsilides asserts that 18 U.S.C. §922(g)(1)'s firearm prohibition violates the Second Amendment as applied to him. Alternatively, he argues §922(g)(1) does not apply to him because his convictions are exempt from this prohibition under §921(a)(20)(A).

As an initial matter, §921(a)(20)(A) excludes from §922(g)(1)'s category of crimes punishable by imprisonment for a period exceeding one

year, "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, and other similar offenses relating to the regulation of business practices." *See* 18 U.S.C. §921(a)(20)(A). If a defendant's conviction falls within this exemption, he is not subject to §922(g)(1)'s firearm prohibition as a matter of law. *Accord U.S. v. Kruckel*, No. 92–611(JBS), 1993 WL 765648, at *16 (D.N.J. Aug. 13, 1993).

Pursuant to §922(g)(1), it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to own a firearm. *See* 18 U.S.C. §922(g)(1). While §922(g)(1) is a "presumptively lawful" firearm regulation, the Third Circuit Court of Appeals has held that individuals may challenge the statute on an as applied basis. *See United States v. Barton*, 633 F.3d 168, 170, 173 (3d Cir. 2011) ("By describing the felon disarmament ban as "presumptively" lawful, *Heller*, 554 U.S. at 626–27 n. 26 [...], the Supreme Court implied that the presumption may be rebutted").

In *Binderup*, the Third Circuit adopted, with some modifications, *Marzzarella*'s two-step approach to Second Amendment challenges. *Binderup v. Attorney Gen. of the U.S.*, 836 F.3d 336, 345-47 (3d Cir. 2016) (citing *U.S. v. Marzarella*, 614 F.3d 85 (3d Cir. 2010)). At the first step, a court considers whether the challenger's conduct is sufficiently "serious" for

- 6 -

the challenger to lose his Second Amendment rights. *Id. at 351-352.* If a challenger "makes a strong showing that the regulation burdens his Second Amendment rights and that he has not committed a serious crime, and thus is different from those historically barred from possessing firearms," the court's analysis then proceeds to *Marzarella*'s second step. *See Holloway*, 948 F.3d 164, 172 (*citing Binderup*, 836 F.3d at 347). At the second step, "the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." *Binderup*, 836 F.3d at 347. Overall, it is the court's duty to determine whether the facts the challenger sets forth adequately distinguishes his circumstances from those of persons historically excluded from Second Amendment protections. *Id.*

Accordingly, this court will first consider whether Pitsilides's bookmaking and pool selling convictions fall under §921(a)(20)(A) and thus exempt from §922(g)(1)'s firearm prohibition. If his convictions are not exempt, the court will turn to the two-step *Marzarella* analysis to determine whether his disqualifying convictions strip him of his Second Amendment rights. In doing so, the court will first determine whether *Pitsilides*'s convictions are sufficiently "serious" under *Marzerella*'s first step. If Pitsilides satisfies his burden under *Marzarella*'s first step, this court will consider

whether the Government has carried its burden of demonstrating that the regulation satisfies heightened scrutiny under *Marzarella*'s second step.

### a. Applicability of §921(a)(20)(A) to Pitsilides

Pitsilides argues that the bookmaking and pool selling offenses he was convicted of constitute "similar offenses relating to the regulation of business practices" under §921(a)(20)(A). This court disagrees.

The Supreme Court and the Third Circuit Court of Appeals have not yet addressed what crimes fall under U.S.C. §921(a)(20)(A) and thus exempted from §922(g)(1)'s firearm prohibition. However, other circuits and a district court in this circuit which have discussed §921(a)(20)(A) generally looked to the plain meaning of the statute and interpreted it to exclude only those offenses "that pertain to antitrust violations, unfair trade practices, restraints of trade, or similar offenses." *See U.S. v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009).

For example, *Kruckel* held that the exemption did not apply to defendant's tax offense because tax laws do not regulate business practices in the "same direct, specific manner that, for example, the antitrust laws do." *See U.S. v. Kruckel*, No. 92–611(JBS), 1993 WL 765648, at *16 (D.N.J. Aug. 13, 1993). In *Stanko*, the court held that the exemption did not apply to a Federal Meat Inspection Act ("FMIA") conviction as "none of [FMIA's]

provisions ... require the Government to prove an effect on competition or consumers as an element of the offense." *United States v. Stanko*, 491 F.3d 408, 417 (8th Cir.2007). Similarly, in *Dreher*, the court reasoned that the plain meaning of the offense, rather than its incidental effects, indicates whether the offense falls under the exemption. *Dreher v. United States*, 115 F.3d 330, 332–33 (5th Cir.1997).

Here, Pitsilides's bookmaking and pool selling offenses do not entail an element of economic harm to competition or consumers. *See* 18 Pa.C.S. §5514-1,3. Furthermore, it appears the bookmaking and pool selling statutes under which Pitsilides was convicted were primarily intended to regulate unauthorized gambling, as opposed to unfair trade practices or restraint of trade. While bookmaking and pool selling may indirectly create an unfair market which undercuts the authorized gambling market, such are incidental effects and not the proper focus of this §921(a)(20)(A) inquiry. *Compare, Reyes v. Sessions*, 342 F.Supp.3d 141, 152 (D.D.C. 2018) (finding plaintiff's conviction under the Securities Exchange Act of 1934 ("Exchange Act") falls within §921(a)(20)(A)'s exemption because the Exchange Act's stated purpose is to prevent economic harm to investors). Thus, it does not appear to this court that Pitsilides's bookmaking and pool selling convictions fall within §921(a)(20)(A)'s exemption.

- 9 -

As such, we proceed to address Pitsilides's as applied challenge under §922(g)(1) using the two-step *Marzarella* framework.

### b. Step one of the *Marzarella* Framework

Although there are no fixed criteria to determine whether a crime is serious enough to strip a challenger of his Second Amendment rights, *Binderup* set forth a nonexclusive four-factor test for determining whether a crime is "serious": "(1) whether a state classifies the offense as a misdemeanor or felony; (2) whether an offense involves violent criminal conduct, *i.e.*, that violence (actual or attempted) is an element of the offense; (3) the severity of the sentence imposed on the challenger; and (4) whether there is cross-jurisdictional consensus regarding the seriousness of the disqualifying crime." *Holloway*, 948 F.3d at 172 n.10 (*citing Binderup*, 836 F.3d at 351-52). The Third Circuit in *Holloway* added one more factor: (5) the potential for physical harm to others. *See id.* at 173. Further, evidence of the passage of time or rehabilitation do not bear on this court's consideration of whether the challenger's crime is serious. *Binderup*, 836 F.3d 350 ("A challenger's risk of violent recidivism tells us nothing about whether he was convicted of a serious crime, and the seriousness of the purportedly disqualifying offense is our sole focus throughout *Marzzarella*'s first step").

While the Third Circuit has not described how these factors should be weighed, it has implied that if a challenger fails to show that all factors favor his claim, the challenger's ability to meet the burden at *Marzzarella*'s first step "becomes correspondingly difficult." *See Laudenslager v. Sessions*, No. 4:17-CV-00330, 2019 WL 587298, at *6 n.53 (M.D.Pa. Feb. 13, 2019) (*citing Binderup*, 836 F.3d at 353 n.6.). Courts in the Third Circuit have generally only allowed those challengers who satisfy all factors to prevail at *Marzarella*'s first step. *See id*. at *6 n.54. ("District courts interpreting *Binderup* have implicitly agreed by typically allowing only those challengers who favorably satisfy all four factors to survive step one").

### 1. State's classification of the offense as a misdemeanor or felony

The first factor supports a finding that plaintiff's disqualifying crimes are not serious enough to strip him of his Second Amendment rights. "Misdemeanors are, and traditionally have been, considered less serious than felonies." *See Binderup*, 836 F.3d at 351 (*citing Baldwin v. New York*, 399 U.S. 66 (1970); misdemeanor, Black's Law Dictionary (10th ed. 2014); 1 LaFave, Substantive Criminal Law §1.6). The Third Circuit has acknowledged that some state misdemeanors, such as kidnapping and assault with the intent to murder, involve conduct more dangerous than felonies and are thus considered serious despite their misdemeanor

- 11 -

classification. *Binderup*, 836 F.3d at 351. (*quoting Tennessee v. Garner*, 471 U.S. 1, 14 (1985)). However, as a general matter, a state legislature's classification of a crime as a misdemeanor "is a powerful expression of its belief that the offense is not serious enough to be disqualifying." *Id*. at 351.

Here, Pitsilides's crimes are enacted as misdemeanors by the Pennsylvania state legislature. (Doc. 24 at ¶¶6, 8, 19). Pitsilides's bookmaking and pool selling convictions are punishable by up to five years' imprisonment under Pennsylvania law, which provides some proof that his crime was serious. Although "the maximum possible punishment is certainly probative of a misdemeanor's seriousness" the Third Circuit has warned that "Congress may not overlook so generally the misdemeanor label, which in the Second Amendment context, is also important." *Binderup*, 836 F.3d at 352. In *Binderup*, the Third Circuit found a challenger's conviction not serious enough to deny his Second Amendment rights even though the disqualifying offense was punishable by up to five years' imprisonment. 836 F.3d at 351-2. As such, this court finds the maximum possible punishment for plaintiff's convictions does not outweigh their misdemeanor classification.

The Government contends Pitsilides's disqualifying convictions should be considered serious even though they are labelled as misdemeanors because the Pennsylvania legislature appears to view them as crimes of

morality rather than of economics. (Doc. 31 at 20-21). Specifically, the Government argues that Pitsilides's bookmaking and pool selling convictions are among "Corrupt organizations" crimes enumerated in 18. Pa.C.S. §911, which Pennsylvania precludes from gun ownership under 18. Pa.C.S. §6105(b). *Id.* While the likelihood that Pennsylvania law would prohibit Pitsilides from firearm ownership because of his convictions provides some support for the seriousness of his offenses, courts in the Third Circuit have not given such a consideration greater weight than the misdemeanor-felony classification of the disqualifying conviction. *See, e.g.*, *Binderup*, 836 F.3d at 351-2 (finding corruption of a minor pursuant to 18 Pa.C.S. §6301(a)(1), a misdemeanor subject to up to five years' imprisonment and among the offenses precluded from gun ownership under 18. Pa.C.S. §6105(b), non-serious under *Marzarella*'s first step). Accordingly, this court refrains from giving such a consideration greater weight than the misdemeanor classification of Pitsilides's convictions. In light of these considerations, this court finds the first factor in favor of Pitsilides.

## 2. Whether the offense involves violent criminal conduct

The second factor supports a finding that Pitsilides's convictions do not amount to serious crimes. An offense involves violent criminal conduct where "violence (actual or attempted) is an element of the offense." *Binderup*, 836

- 13 -

F.3d 336, 352 (*quoting U.S. v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).

Because use or attempted use of force is not an element of bookmaking or pool selling, Pitsilides's offenses do not involve violent criminal conduct.

### 3. Severity of the sentence imposed on the challenger

The third factor is also in favor of Pitsilides. Here, Pitsilides was sentenced to two years of unsupervised probation and was fined $448,500 in restitution relating to his disqualifying convictions under Pennsylvania law. (Doc. 24 at 10-11). This court notes plaintiff's sentencing to two years of unsupervised probation alone is insufficient to tip the third factor in favor of defendants, as the Third Circuit considers the absence of a custodial sentence indicative of a non-serious offense. *Binderup*, 836 F.3d at 352 ("With not a single day of jail time, the punishments here reflect the sentencing judges' assessment of how minor the violations were."); *Laudenslager*, 2019 WL 587298, at *5 (finding plaintiff's sentencing to three years' probation and a $300 fine minor).

While the Government acknowledges that Pitsilides did not receive a custodial sentence, it claims the $448,500 he was ordered to pay in restitution stemming from the amount involved in his gambling activities evinces a severe sentence. (Doc. 31 at 16). It appears that courts in the Third Circuit courts have not looked to the amount of restitution to determine the

- 14 -

severity of a sentence. *Compare Binderup*, 836 F.3d at 352 (finding a plaintiff's three years' probation and a $300 fine plus court costs and restitution reflect a minor sentence because the plaintiff was not sentenced to jail time). Further, it appears to the court that a custodial sentence is more indicative of the severity of a crime for the instant purpose of determining whether a disqualifying crime is serious enough to require disarmament. A criminal sentence reflects a judge's determination, likely with the benefit of pre-sentence reports prepared by trained professionals, of the risks the offender poses to public safety. By contrast, the amount of restitution the offender was charged with appears to address the economic extent and nature of the underlying crime. This court thus finds Pitsilides's sentence non-severe.

### 4. Cross-jurisdictional consensus regarding the seriousness of the disqualifying crime

The fourth factor leans in favor of the Government. In determining whether cross-jurisdictional consensus exists, "courts should consider not only if there is consensus as to whether States punish the particular disqualifying offense, but also as to *how severely* States punish the offense—*i.e.,* whether States punish it so severely as for it to be disqualifying under §922(g)(1)." *Laudenslager*, 2019 WL 587298 at *5 (*quoting Zedonis v. Lynch*, 233 F.Supp.3d 417, 431 (M.D.Pa. 2017)) (emphasis in original). As it

is a challenger's burden to make a "strong showing" that he has not committed a "serious crime," it is the challenger's burden to prove the absence of a consensus. *See Range v. Lombardo*, No. 20-3488, 2021 WL 3887686, at *4 (E.D.Pa. Aug. 31, 2021) (*quoting Holloway*, 948 F.3d at 172). Where challengers to a firearm regulation are "unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one." *See Binderup*, 836 F.3d at 353.

Here, the Government submitted a 51-jurisdiction survey of codified crimes closely analogous to Pennsylvania's bookmaking and pool selling statutes, which Pitsilides does not contest. (Doc. 31-1). According to the Government's survey, bookmaking and pool selling are explicitly criminalized in 37 jurisdictions, of which 22 jurisdictions impose a maximum sentence of over a year's imprisonment. (Doc. 31 at 23; Doc. 31-1). The remaining 14 jurisdictions do not explicitly criminalize bookmaking and pool selling, but may criminalize such conduct under related statutes that prohibit illegal gambling. *Id*. Among those 14 jurisdictions, 5 impose a maximum sentence of over a year's imprisonment. *Id*. Thus, potentially all 51 U.S. jurisdictions criminalize bookmaking and pool selling and 27 jurisdictions prescribe a maximum sentence that "meet[s] the threshold of a traditional felony (more than a year in prison)." *Binderup*, 836 F.3d at 352. Moreover, the

- 16 -

Government indicates that almost all jurisdictions using a felony-misdemeanor classification system consider bookmaking and pool selling a felony. (Doc. 31 at 23).

While the *Binderup* court did not define what "consensus" means, Third Circuit courts have interpreted the word "consensus" to imply "something short of total unanimity," but rather the "acknowledged existence of a general agreement." *See Lombardo*, 2021 WL 3887686, at *4 (internal quotations omitted). In *Laudenslager*, the court found such consensus existed where the predicate offense was criminalized in all jurisdictions and nearly three-fourths of the jurisdictions impose over a year's imprisonment. 2019 WL 587298 at *6. Similarly, in *Baumiller*, the court deemed a consensus existed where the predicate offense was criminalized in all states, and most states classified the offense as a felony. *Baumiller v. Sessions*, 371 F.Supp.3d 224, 232 (W.D.Pa. 2019). By contrast, *Binderup* found no such consensus where the disqualifying offense was treated as serious in some states, but more than half of all states prescribed a maximum sentence of not more than a year's imprisonment. 836 F.3d at 352-3.

The Government's survey demonstrates a degree of consensus that is more analogous to that found in *Laudenslager* and *Baumiller* than in *Binderup*. It appears to this court that there is cross-jurisdictional consensus

where between 37 and all 51 U.S. jurisdictions would criminalize plaintiff's disqualifying offenses and between 22 and 27 states would impose corresponding criminal sentences of more than a year's imprisonment. *Compare Lombardo*, 2021 WL 3887686, at *5 (finding consensus where parties agree between 39 and 41 jurisdictions in U.S. would classify plaintiff's conduct as a felony).

Even if this case falls close to the line, Pitsilides has not met his burden of showing the absence of cross-jurisdictional consensus. In effort to meet his burden, Pitsilides relies on the Supreme Court's recent holding deeming a federal prohibition on sports gambling unconstitutional as well as the observation that many states have taken steps to legalize sports gambling. (Doc 30 at 14); *Murphy v. Nat'l Collegiate Athletic Ass'n, No.* 16-476, 584 U.S. ___ (2018). He further points out that courts in some states, such as Virginia, do not consider bookmaking to be a crime of moral turpitude. (Doc 30 at 14); *Parr v. Cmwlth*, 96 S.E.2d 160 (Va. 1957). As an initial matter, the Supreme Court's holding in Murphy does not specifically address bookmaking or pool selling. Moreover, as previously noted, a successful showing of cross-jurisdictional consensus does not require demonstrating unanimity, but rather an "acknowledged existence of a general agreement" is enough. *See Lombardo*, 2021 WL 3887686, at *4. The Supreme Court's

- 18 -

rejection of a federal ban on sports gambling and the fact that some states do not consider bookmaking to involve moral turpitude possibly suggest a lack of unanimity across jurisdictions, but ultimately fall short of proving that there is not otherwise a general agreement across various jurisdictions that bookmaking and pool selling are not serious crimes. Without more evidence in Pitsilides's favor, he cannot meet his burden of presenting a strong showing of the absence of a consensus here.

### 5. Likelihood of physical harm

The fifth factor is in favor of Pitsilides. The Government does not contend that bookmaking and pool selling involve potential for physical harm to others. As bookmaking and pool selling are not likely to entail physical harm, the fifth factor also weighs in favor of Pitsilides. *Compare Lombardo, 2021 WL 3887686, at *4* (finding making false statement to obtain food stamps assistance does not involve potential for physical harm*); Holloway*, 948 F.3d at 173-4 (finding driving under the influence to be an offense that likely involves physical harm where states have implemented safety programs to reduce deaths associated with the conduct).

Because the court has concluded that there is cross-jurisdictional consensus that bookmaking and pool selling are serious crimes, the next

question is whether this factor alone would be sufficient for the Government to prevail. The court finds that it is. While *Binderup* describes the first step of the *Marzarella* framework as a balancing test, subsequent cases interpreting *Binderup* have denied challengers' Second Amendment rights even though only a single factor weighed in favor of doing so. *See, e.g., Holloway*, 948 F.3d at 173 (finding in favor of the government even though only the "likelihood of physical harm" factor weighed in its favor); *Folajtar v. Attorney Gen. of the U.S.*, 980 F.3d 897, 900 (3d Cir. 2020) (ruling for the government though the only factor in its favor was the law's classification of plaintiff's offense as a felony rather than a misdemeanor); *Lombardo*, 2021 WL 3887686, at *5 (concluding for the government where the single factor in its favor was the finding of cross-jurisdictional consensus).

As the court finds that the cross-jurisdictional consensus factor indicates that Pitsilides's disqualifying crime is serious, the Government prevails at step one of the *Marzzarella* framework, and the court will not proceed to step two to consider whether the Government has produced sufficient evidence to withstand heightened scrutiny. Accordingly, the Government's summary judgment motion prevails.

## IV.    **Conclusion**

For the foregoing reasons, the Government's summary judgment motion, (Doc. 25), will be granted. Pitsilides's summary judgment motion, (Doc. 22), will be denied.

An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 19, 2021**
19-01736-01